IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES SZARAWARA, | : | CIVIL CASE |
|     Plaintiff, | : | |
|         v. | : | |
| | : | |
| COUNTY OF MONTGOMERY, | : | |
|     Defendant. | : | NO. 12-5714 |

**MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION TO DISMISS**

**Baylson, J.**                                                                                                                      June 27, 2013

**I.**     **Introduction**

Plaintiff James Szarawara ("Plaintiff") alleges that his former employer, Defendant the County of Montgomery ("Defemdant"), unlawfully discriminated against him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq. Currently before the Court is Defendant's Motion to Dismiss Plaintiff's claims. For the reasons below, the Court GRANTS the Motion in Part and DENIES it in part. The Court also grants Plaintiff leave to amend his complaint.

**II.**     **Facts Alleged by Plaintiff**

In August 2005, Plaintiff began his employment with Defendant in its Emergency Dispatch Services Center, working night shifts as a Telecommunicator. In October 2008, Plaintiff was diagnosed with Type II Diabetes, hypertension, and dyslipidemia. Shortly after his diagnosis, Plaintiff began experiencing headaches, dizziness, and loss of focus with increasing, though unspecified, frequency.

On or around July 25, 2009, while at work, Plaintiff experienced severe headaches, blurred vision, and dizziness, all induced, Plaintiff believes, by his diabetes. As a result of his performance that day, Defendant issued Plaintiff three disciplinary warnings.

A few days later, Plaintiff met with Defendant's Deputy Public Safety Director and Assistant Public Safety Director regarding these warnings. The meeting included a discussion of Plaintiff's medical conditions, including Plaintiff's belief that his diabetes was the cause of his work performance issues. Plaintiff specifically mentioned that his treating physician advised him to establish healthier sleep patterns, which would require changing his work schedule to include day shifts. Ultimately, the Deputy Public Safety Director and Assistant Public Safety Director determined that Plaintiff should be suspended for three days, but they deferred imposition of the suspension pending the outcome of an investigation into his medical issues.

Sometime after the meeting, Plaintiff provided Defendant with a letter from his treating physician, dated August 3, 2009, which stated that Plaintiff was "approaching reasonable control of his conditions," and that his prognosis would be improved by compliance with medication, weight loss, increased physical activity, a low-fat and low-carbohydrate diet, as well as "good sleep habits . . . which would be supported by regular diurnal cycles from working during AM hours." (Am. Compl., Ex. C). Defendant telephoned Plaintiff's treating physician, but she would not discuss Plaintiff's condition, because she had not received his consent to do so. (See Id., Ex. D.) On August 7, 2009, Plaintiff's treating physician sent Defendant a second letter, following up on the telephone conversation. (Id.) The letter stated that Plaintiff was "capable of performing the responsibilities of his job . . . but this becomes less clear for the future." (Id.) The letter closed by opining that Plaintiff's long term health would be best served by "proper sleep patterns which . . . includes working during daytime hours." (Id.)

Sometime after receiving the second letter, Defendant offered Plaintiff the opportunity to take unpaid medical leave. Plaintiff declined the leave, because it was unpaid, and his diabetes would affect him beyond the leave period. Plaintiff also suggested a variety of ways in which

Defendant could help him change his working hours, including moving him to part-time status and transferring him to a lower-paying, day-shift position. Defendant, however, agreed to none of Plaintiff's suggestions.

Plaintiff then resigned because he believed his diabetes and other medical conditions rendered him unable to perform his job.

## III. Legal Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). Courts must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Iqbal clarified that the Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), which required a heightened degree of fact pleading in an antitrust case, "expounded the pleading standard for 'all civil actions.'" 555 U.S. at 684.

Iqbal explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Id. at 678, 685. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v.

County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing Twombly, 550 U.S. at 556 n.3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

**V.     Discussion**

Plaintiff claims disability discrimination under the ADA and PHRA. The ADA was substantially amended by the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (codified in various provisions of 42 U.S.C. §§ 12101 et seq.), which became effective as of January 1, 2009.[1] Prior to the ADAAA, claims under the ADA and PHRA were considered simultaneously "because the acts serve[d] the same goals and [were] interpreted coextensively." Castellani v. Bucks Cnty. Municipality, 351 F. App'x 774, 777 (3d Cir. 2009) (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir.1996)). This is no longer the case. The ADAAA relaxed the ADA's standard for disability, 42 U.S.C. § 12102(4)(A) ( "[t]he definition of disability . . . shall be construed in favor of broad coverage, to the maximum extent permitted

---

[1] The ADAAA applies to this case because the conduct Plaintiff complains of occurred after the ADAAA's effective date. The Court notes, however, that the Equal Employment Opportunity Commission ("EEOC") regulations interpreting the amended ADA were not effective until May 24, 2011. Regulations To Implement the Equal Employment Provisions of the Americans with Disabilities Act, as Amended, 76 Fed. Reg. 16,978 (Mar. 25, 2011) (codified at 29 C.F.R. pt. 1630). Although the complained-of conduct in this case occurred prior to the effective date of these updated regulations, the Court will be guided by them in applying the amended ADA to Plaintiff's claims. It would be inappropriate to apply the EECOC's previous regulations in light of the EEOC's position that the ADAAA "change[d] the way that" key "statutory terms should be interpreted in several ways, therefore necessitating revision of the prior regulations and interpretive guidance." Id. at 16,978.

4

by the terms of this chapter"); 29 CFR § 1630.2(j)(1)(i)-(iii) ("[a]n impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity"; "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA . . . . [it] is not meant to be a demanding standard"; "the term 'substantially limits' shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA"), but the PHRA has not been similarly amended, necessitating separate analysis of Plaintiff's ADA and PHRA claims.

### A. Plaintiff Has a Viable ADA Discrimination Claim for Failure to Provide a Reasonable Accommodation.

In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show that he:

1. "[I]s disabled";

2. "[I]s otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer"; and

3. "Suffered . . . an adverse employment action as a result of his disability."

Stadtmiller v. UPMC Health Plan, Inc., 491 F. App'x 334, 336 (3d Cir. 2012) (citing Hohider v. UPS, 574 F.3d 169, 186 (3d Cir. 2009)). Adverse employment actions "include refusing to make reasonable accommodations for a plaintiff's disabilities." Williams v. Phila. Hous. Auth. Police Dept., 380 F.3d 751, 761 (3d Cir. 2004); 42 U.S.C. § 12112(b)(5)(A). The third element of Plaintiff's prima facie case is not in dispute, and the allegations in his Amended Complaint are sufficient to satisfy the first two elements.

### 1. Disability

Under the ADA, disability means "a physical . . . impairment that substantially limits one or more major life activities." Id. § 12102(1)(A). "Major life activities" include "[m]ajor bodily functions," such as "endocrine . . . function[]." Id. § 12102(2)(B).

Plaintiff alleges, and Defendant does not dispute, that he suffers from Type II Diabetes. The EEOC has advised that diabetes "will, as a factual matter, virtually always be found to impose a substantial limitation" on endocrine function. 29 C.F.R. § 1630.2(j)(3)(ii)-(iii). Defendant provides no basis for the Court to find that the EEOC's general guidance regarding diabetes is inapplicable to Plaintiff.[2]

### 2. Otherwise Qualified to Perform the Essential Functions of the Job

Regarding the second element of his prima facie case, Plaintiff alleges that he would be able to perform all the essential functions of his job if he were permitted to work day shifts. Defendant's only counter argument is that Plaintiff's request to work day shifts is unreasonable, because working night shifts is either:

1. An essential function of Plaintiff's job; or
2. Unrelated to his disability.

#### a. Essential Job Function

"[W]hether a particular function is essential "'is a factual determination that must be made on a case by case basis [based upon] all relevant evidence.'" Turner v. Hershey Chocolate U.S., 440 F.3d 604, 612-13 (3d Cir. 2006) (alterations and emphasis in the original) (quoting

---

[2] Defendant's contrary arguments rely exclusively on pre-ADAAA cases and EEOC regulations.

Deane v. Pocono Med. Ctr., 142 F.3d 138, 148 (3d Cir. 1998) (en banc)).[3] While the description of Plaintiff's job indicates that the job requires "work[ing] various shifts, rotating schedules, weekends[,] and holidays," (Mot., Ex. F.)[4] Defendant provides no authority for its contention that such a description, even in combination with the twenty-four-hour staffing requirements of the Emergency Dispatch Services Center, necessarily renders working night shifts an essential function of Plaintiff's job.[5] Absent such authority, and given the fact-intensive nature of the issue, it would be inappropriate at this stage for the Court to decide whether working night shifts is an essential function of Plaintiff's job. See Lightcap-Steele v. KidsPeace Hosp., Inc., Civil Action No. 05-02578, 2006 WL 1147476, at *10 (E.D. Pa. Apr. 27, 2006) (Pratter, J.) (citing Deane v. Pocono Medical Center, 142 F.3d 138, 142 (3d Cir.1998)); 29 C.F.R. § 1630.2(n)(3)(i)-

---

[3] The Court is aware of no case indicating that the ADAAA has any impact on the standard for essential job functions.

[4] The description of Plaintiff's job is an exhibit to Defendant's Motion. The Court, however, finds that Plaintiff incorporated it into his Amended Complaint, because Exhibit C to his Amended Complaint is a letter from Plaintiff's treating physician in which she opines on Plaintiff's "ability to perform the essential functions of his job as telecommunicator, as set forth in the description of his position that your office provided." See Winer Family Trust v. Queen, 503 F.3d 319, 328 (3d Cir. 2007) (stating that in deciding a 12(b)(6) motion, "the District Court properly probed documents attached to defendants' motion to dismiss . . . because these documents were integral to and/or were explicitly relied upon by the amended complaint").

[5] In support of its proposition that "[i]n similar circumstances . . . several courts around the country have found a night shift/rotating shift schedule to be an essential function of [a] position," Defendant cited Hutton v. Elf Atochem North America, Inc., 273 F.3d 884 (9th Cir. 2001), and Laurin v. Providence Hospital, 150 F.3d 52 (1st Cir. 1998). (Mot. at 10). Hutton, however, made no holding regarding essential functions, stating that "[b]ecause we conclude that summary judgment was properly granted based on the existence of a direct threat, we do not reach the issue of whether Hutton could perform the essential functions of the job." 273 F.3d at 892 (emphasis added). And Laurin, while it did hold that working evening and night shifts was an essential function of certain nursing jobs in a hospital with twenty-four hour nursing requirements, did so when deciding a motion for summary judgment and only after extensive discussion of the record. 150 F.3d at 59-61 (noting that the hospital's twenty-four hour environment presented "exceptional nurse-scheduling demands," and the hospital had "always required all" nurses in the plaintiff's position "to rotate shifts and it ha[d] never made an exception" (emphasis in original)).

7

(vii) ("employer's judgment as to which functions are essential" and "[w]ritten job descriptions" are only two of seven non-exclusive factors relevant to the essential function inquiry).

### b. Relation of Plaintiff's Requested Accommodation to His Alleged Disability

Defendant also argues that Plaintiff's request to work day shifts is not related to his disability. In support of this contention, Defendant cites the fact that Plaintiff's treating physician:

1. Opined that other changes in Plaintiff's lifestyle would improve his medical conditions, and

2. Stated that anyone, not just Plaintiff, would be healthier by not working night shifts.

The Court finds Defendant's position unavailing.

The Court cannot say that Defendant was relieved of its obligations under the ADA because Plaintiff's doctor suggested alternatives to Plaintiff's requested accommodation that would also mitigate the effects of his medical conditions. Defendant cites no authority, and the Court is aware of none, for its implied proposition that Plaintiff must exhaust all other possible methods of mitigating the effects of his alleged disability before requesting an accommodation under the ADA. Nor can the Court say that because Plaintiff's requested accommodation is preferable for anyone, regardless of whether they suffer from a disability, that the accommodation is unrelated to his disability.

The Court recognizes that there is currently no indication that working daytime shifts would be a "magic pill," surely allowing Plaintiff to fully perform his job duties. Even so, this raises, at best, factual issues regarding the effectiveness of Plaintiff's requested accommodation that are not appropriately resolved on a motion to dismiss. See Deily v. Waste Mgmt. of Allentown, 55 F. App'x 605, 607 (3d Cir. 2003) ("Under the ADA, [the plaintiff] must establish

that he is qualified to do his job, and if accommodation is required, he must also show that an effective accommodation is available that would enable him to do the job." (emphasis added) (citing Walton v. Mental Health Ass'n of Se. Pa., 168 F.3d 661, 670 (3d Cir. 1999))); 29 C.F.R. § 1630.2(o)(1)(ii) ("reasonable accommodation means . . . [m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position" (emphasis added)).

B. **Plaintiff Fails to Plead a "Regarded As" Disability Discrimination Claim Under the ADA.**

Plaintiff claims, in the alternative, that Defendant discriminated against him in violation of the ADA because Defendants regarded him as disabled. The only adverse employment action Plaintiff alleges is Defendant's failure to provide him with a reasonable accommodation for his allegedly perceived disability.[6] This is not a cognizable claim pursuant to the ADAAA, which

---

[6] The Court rejects Plaintiff's contention that Defendant's conduct amounted to a constructive discharge. Plaintiff alleges no facts consistent with his work environment being so objectively intolerable that a reasonable person would have been compelled to resign. He also cites no authority for the proposition that a failure to provide a reasonable accommodation, by itself, creates such an environment. Cf. Kiburz v. England, 361 F. App'x 326, 337 & n.11 (3d Cir. 2010) ("[the plaintiff's] assertions of a convoluted accommodation request process, even if true, are a far cry from cases where we have concluded that an employee was constructively discharged"; "'[i]ntolerability' is a fairly high standard. . . . requir[ing] a showing that a reasonable person in the employee's position would feel like she had 'no choice but to resign'" (quoting Connors v. Chrysler Fin. Corp., 160 F.3d 971, 974 (3d Cir. 1998); Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1084-85 (3d Cir. 1996); Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir. 1993))); see also Colwell v. Rite Aid Corp., 602 F.3d 495, 503-04 (3d Cir. 2010) ("Factors we have found relevant to [constructive discharge] are whether the employer (1) 'threatened [the employee] with discharge' or 'urge[d] or suggest[ed] that she resign or retire,' (2) 'demote[d] her,' (3) 'reduce[d] her pay or benefits,' (4) 'involuntarily transferred [her] to a less desirable position,' (5) altered her 'job responsibilities,' or (6) gave 'unsatisfactory job evaluations.'" (alterations in the original) (quoting Clowes, 991 F.2d at 1161)).

provides that employers "need not provide a reasonable accommodation . . . to an [employee] who meets the definition of disability . . . solely" because he is regarded as disabled. 42 U.S.C. § 12201(h); accord Hohider v. UPS, Inc., 574 F.3d 169, 199 n.17 (3d Cir. 2009).

### C. Plaintiff Fails to Plead a Claim Under the PHRA for Failure to Provide a Reasonable Accommodation.

In order to make out a prima facie a case of discrimination under the PHRA, "a plaintiff must establish that he is a 'qualified individual' with a 'disability' who suffered an adverse employment action 'because that disability.'" Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 274 (3d Cir. 2012) (quoting Turner, 440 F.3d at 611). In order to establish a disability, a plaintiff must show that he is more than merely impaired; he must demonstrate:

1. "[A]n actual mental or physical impairment that substantially limits one or more major life activities,"

2. "[A] record of such impairment," or

3. "[T]hat his employer regarded him as having a disability."

Macfarlan, 675 F.3d at 274.

Defendant argues that Plaintiff cannot establish that he is disabled within the meaning of the PHRA because his Type II Diabetes is non-insulin dependent and, therefore, per se not a disability under the PHRA. (Mot. at 5). Defendant cites no authority for this per se rule, and the Court is aware of none.[7]

---

[7] Defendant cites Thompson v. Eaton Corp., No. 02-C-051-C , 2002 WL 31995670 (W.D. Wis. Dec. 11, 2002), and Carlson v. Rent-A-Center, Inc., 237 F. Supp. 2d 114 (D. Maine 2003), neither of which supports its position. According to Thompson, "there is no question that diabetes is an impairment" – the question in that case was whether the plaintiff's diabetes substantially limited a major life activity. 2002 WL 31995670, at *7. Similarly, the court in Carlson addressed the question of whether a walking impairment allegedly caused by the plaintiff's diabetes-related leg circulation issues was sufficiently severe to qualify as a disability; the court did not rule that a plaintiff's diabetes must be insulin-dependent in order for it to result in a disability. 237 F. Supp. 2d at 121-22.

Defendant contends, in the alternative, that Plaintiff's diabetes cannot qualify as a disability, because he fails to allege facts that, if true, would establish that his diabetes prevents him from working in a substantial class of jobs. (Mot. at 11). Plaintiff's PHRA claim, however, is not based on an assertion that he is substantially limited in his ability to work. Rather, Plaintiff claims that he suffers from substantial limitations regarding his abilities to think, concentrate, learn, read, and interact with others. Even assuming that these qualify as major life activities under the PHRA, see 29 CFR § 1630.2(i) ("Major Life Activities means functions such as . . . learning."); Bialko v. Quaker Oats Co., 434 F. App'x 139, 142 (3d Cir. 2011) (treating thinking, concentrating, and socializing as major life activities), Plaintiff fails to allege sufficient facts that, if true, would establish that he is substantially limited with respect to any of them.

"'[S]ubstantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.'" Colwell, 602 F.3d 495 (alterations in the original) (quoting Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002)). Thus, an impairment is considered substantially limiting only if the plaintiff is:

> 1. "Unable to perform a major life activity that the average person in the general population can perform; or"
>
> 2. "Significantly restricted as to the condition, manner, and duration under which [he] can perform a particular major life activity as compared to the condition, manner, and duration under which the average person in the general population can perform that same major life activity."

29 C.F.R. § 1630.2(j)(1)(i)-(ii); accord Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 782 (3d Cir. 1998) (citing id.). In making this determination, Courts should consider:

> 1. "'The nature and severity of the impairment;'"
>
> 2. "'The duration or expected duration of the impairment;'" and
>
> 3. "'The permanent or long term impact of or resulting from the impairment.'"

Mondzelewski, 162 F.3d at 782 (alterations omitted) (quoting 29 C.F.R. § 1630.2(j)(2)(i)-(iii)). It is also helpful to analogize and distinguish the plaintiff's complaint from similar complaints "that were deemed to sufficiently plead a disability." Koller v. Riley Riper Hollin & Colagreco, 850 F. Supp. 2d 502, 513 (E.D. Pa. 2012) (Jones, J.).

Plaintiff's allegations are insufficient for any factfinder to perform the requisite analysis. His vague allegations that he has suffers from headaches, dizziness, and loss of focus with increasing frequency, and that he was disciplined at work on one occasion, while certainly consistent with some limitations, do not permit any reasonably accurate assessment of the magnitude of limitation he faces in any major life activity. See Warshaw v. Concentra Health Servs., 719 F. Supp. 2d 484, 495-96 (E.D. Pa. 2010) (Pollak, J.) (summary judgment against the plaintiff was appropriate where "[n]othing in the record . . . indicate[d] that [the] plaintiff [was] substantially – as opposed to slightly or moderately – impaired in his ability to think or concentrate . . . [c]rucially, [the] plaintiff ha[d] not presented any evidence to demonstrate how these limitations affect his quotidian activities" (emphasis in the original)). Additionally, Plaintiff's treating physician stated that he was "approaching reasonably good control" of his medical conditions, and that he was "capable of performing the responsibilities of his job, in the short term, but this becomes less clear for the future." Both of these statements belie Plaintiff's assertion that he suffers from substantial limitations. (Am. Compl., Exs. C and D).

### D. Plaintiff Fails to Plead a "Regarded As" Discrimination Claim Under the PHRA.

Proper pleading of a claim for discrimination under the PHRA because an employer "regarded" a plaintiff as disabled requires that the plaintiff allege facts that, if true, would establish "that the employer believed that a wholly unimpaired plaintiff had an impairment that substantially limited at least one major life activity or that the employer believed an employee's

12

actual impairment to limit major life activities when it in fact did not." Macfarlan, 675 F.3d at 274.

Plaintiff, however, makes only the conclusory allegation that Defendant "treated him differently than other employees who were not regarded as disabled," (Am. Compl. ¶ 11); nothing in his Amended Complaint even hints at the nature of the limitation from which Defendant allegedly believed him to suffer. This is a patently insufficient pleading: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to survive a motion to dismiss. Iqbal, 556 U.S. at 679.

## VI. Conclusion

For the reasons above, Defendant's Motion to Dismiss is DENIED in part and GRANTED in part. The Court grants Plaintiff leave to file a second amended complaint to address the issues discussed above. An appropriate Order follows.

O:\Matt12\12cv5714.Szarawara v. Couny of Montgomery\12cv5714.Memo re Mot. to Dismiss[6.24.13].doc